STATE OF MAINE
CUMBERLAND, SS.

SUPERIOR COURT
Civil Action
Docket No. CV-06-183

GENUJOLOK Beteiligungs )
GmbH (formerly known as )
Lombardkasse AG), )
            Plaintiff )
             )
          v. )          ORDER
             )
Manfred Zorn )
         Defendant )

Before the court is defendant Manfred Zorn's motion for a plenary hearing on the issue of whether a judgment rendered against him by the courts of Germany should be enforced. That motion was originally filed in April 2006. However, after that motion was fully briefed, the clerk's office reported that both parties had requested that the court withhold any decision on the motion while settlement was explored. In late January 2007, the parties advised the court that settlement discussions had failed.

The initial question is whether, under the Uniform Enforcement of Foreign Judgment Act, 14 M.R.S. §§ 8001-08 (the "Enforcement Act"), and the Uniform Foreign Money-Judgment Recognition Act, 14 M.R.S. §§ 8501-09 ("Recognition Act"), a plenary hearing is required. Although it is unclear exactly what Zorn

means by a "plenary" hearing,[1] he is seeking to contest whether the German judgment against him is entitled to recognition under the Recognition Act. Specifically, the Recognition Act lists three conditions under which a foreign judgment will be declared to be "not conclusive" and seven additional conditions under which foreign judgments "need not be recognized." 14 M.R.S. § 8505. Zorn argues that a number of these conditions exist here.

At the outset, although no specific procedure is set forth in the Recognition Act for raising objections to the recognition of a foreign judgment, the court finds such a procedure to be implicit in the Recognition and the Enforcement Acts.

The Enforcement Act applies to "any judgment, decree, or order of a court of the United States or of any other court which is entitled to full faith and credit in this State." 14 M.R.S.A. § 8002. The language regarding judgments entitled to "full faith and credit in this State" makes clear that the Enforcement Act is primarily concerned with the procedure for enforcing judgments from other *states*. By its terms, however, the Enforcement Act is not limited by its terms to enforcing judgments of other states. Rather, the Enforcement Act applies to any judgment entitled to "full faith and credit in this State." Any such judgment may be enforced

_____

[1] To the extent that Zorn is seeking to raise arguments that the German judgment should not be recognized under 14 M.R.S. § 8505, he is entitled to a hearing on those arguments. However, he is not entitled to an evidentiary hearing unless he raises contentions that cannot be resolved in the absence of such a hearing. Moreover, Zorn's right to a hearing also does not require oral argument. *See* M. R. Civ. P. 7(b)(7) (motion may be decided without oral argument); *Southern Maine Properties Co., Inc. v. Johnson*, 1999 ME 37, ¶¶ 6-8, 724 A.2d 1255, 1257.

2

in Maine under an expedited procedure where the foreign judgment is registered with the clerk of the court and then treated "in the same manner as a judgment of [a court] of this State." 14 M.R.S.A. § 8003. Once notice has been provided to a judgment debtor and a thirty-day waiting period has expired, a foreign judgment may be executed upon. 14 M.R.S.A. § 8004.

Although similar in name, the Recognition Act serves a very different function than the Enforcement Act. The Recognition Act applies on its face to any "foreign judgment." 14 M.R.S.A. § 8503. A "foreign judgment" for purposes of the Recognition Act is "any judgment of a *foreign state*," and "foreign state" is defined to include "any governmental unit other than the United States." 14 M.R.S.A. § 8502 (emphasis added). Under the Recognition Act, any foreign judgment complying with the specifications of that act "is conclusive between the parties to the extent that it grants or denies recovery of a sum of money . . . [and] enforceable in the same manner as the judgment of a sister state that is entitled to full faith and credit." 14 M.R.S.A. § 8504. Therefore, the Recognition Act is designed to determine whether the judgment rendered by a foreign country is entitled to recognition. If so, that judgment may be enforced (under the Enforcement Act) in the same manner as if it were the judgment of a sister state.

The enumeration in the Recognition Act of various grounds upon which a judgment of a foreign country may be denied recognition, 14 M.R.S. § 8505,

3

strongly implies that some procedure must be available to a judgment debtor to present arguments for nonrecognition. Moreover, the Enforcement Act provides that notice of the filing of a foreign judgment must be made to the last known address of the judgment debtor and that no execution or other process shall serve until thirty days after the judgment is filed. 14 M.R.S. § 8004. This is plainly intended to allow the judgment debtor to apply to the court for any appropriate relief, such as an order "reopening, vacating, or staying" the judgment. 14 M.R.S. § 8003. The court, therefore, interprets the Recognition and Enforcement Acts as allowing a judgment debtor to raise any arguments that would justify nonrecognition by filing a motion contesting recognition, exactly as Zorn has done in this case. In reaching this result, the court is mindful of its obligation to interpret statutes in a manner that satisfies constitutional requirements. *E.g., Rideout v. Riendeau*, 2000 ME 198, ¶ 14, 761 A.2d 291, 297-98.

Accordingly, the court is not inclined to follow Texas decisions holding the Recognition Act invalid in the absence of an express statutory procedure for challenging whether a foreign judgment is entitled to recognition. So long as a judgment debtor has been given an opportunity to raise arguments for

4

nonrecognition — as Zorn has in this instant case — there is no constitutional infirmity.[2]

Remaining to be addressed are the specific arguments against recognition that Zorn has raised in this case.

## 1. Lack of Personal Jurisdiction

Zorn contends that the judgment against him cannot be given effect because the German court did not have jurisdiction over him. *See* 14 M.R.S. § 8505(1)(B).

The claim against Zorn is based on a notarized recognition of debt which was subsequently reduced to judgment in the Frankfurt am Main Regional Court. A translation of the notarized recognition of debt is contained in the record and provides in Section B.IX:

> It is agreed that the place of jurisdiction for all disputes arising in connection with or as a result of this document or disputes relating to its termination or validity shall be Frankfurt am Main.

Muller Affidavit, Exhibit A.

Pursuant to 14 M.R.S. § 8506(1)(C), a foreign judgment will not be refused recognition for lack of personal jurisdiction if "the defendant prior to the commencement of the proceedings had agreed to submit to the jurisdiction of the

---

[2] Thus, so long as there is an opportunity to object to recognition, the court agrees with the decision of the Seventh Circuit in *Society of Lloyd's v. Ashenden*, 233 F.3d 473, 481 (7th Cir. 2000) (Posner, J.) that there does not need to be a separate recognition proceeding before enforcement proceedings are commenced.

5

foreign court with respect to the subject matter involved." In his reply memorandum, Zorn does not dispute that Exhibit A to the Muller Affidavit is a valid translation of the notarized recognition of debt. Zorn's argument under section 8505(1)(B), therefore, must be rejected.

In the alternative, it appears that Zorn also cannot contest jurisdiction because he voluntarily appeared by counsel in the German proceeding and raised issues beyond contesting jurisdiction. *See* 14 M.R.S. § 8506(1)(B). This is apparent from the May 10, 2004, judgment of the Frankfurt Am Main Regional Court which appears (with certified translation) in the record.[3]

## 2. Due Process

Zorn's second contention is that the judgment against him is not entitled to recognition because he was denied due process by the German courts. *See* 14 M.R.S. § 8505(1)(A). In making this argument, however, Zorn misconstrues section 8505(1)(A). That section provides that a foreign judgment is not conclusive if rendered:

> under a <u>system</u> that does not provide impartial tribunals or procedures compatible with the requirements of due process of law.

---

[3] In addition, it appears from the record that the debt here arises from defendant's activities as a freelance broker on the Frankfurt Securities Exchange prior to 1995. May 10, 2004 judgment at page 2. This indicates that the original debt arose out of transactions that occurred in Germany – a basis for long-arm jurisdiction compatible with due process.

(emphasis added.) *See Society of Lloyd's v. Ashenden,* 233 F.3d at 476-78. Thus, rather than embark on an inquiry as to whether Zorn was afforded due process under the specific circumstances of this case, the statute requires an inquiry into whether the German system of justice generally provides impartial tribunals and procedures compatible with the requirements of due process. *Id.*

This inquiry must be answered in the affirmative. Although not identical with the Anglo American system of justice, "German's legal system clearly follows procedures that ensure that litigants will receive treatment that satisfies American notions of due process." *Turner Entertainment Co. v. Degeto Film GmbH,* 25 F.3d 1512, 1520 (11th Cir. 1994). *Accord, Dresdner Bank AG v. Haque,* 161 F.Supp.2d 259, 263 n.7 (S.D.N.Y. 2001).[4]

To the extent relevant, the record before the court does not support Zorn's contention that he was denied due process. Specifically, the record demonstrates that Zorn entered into a "notarized recognition of debt" which under German law has certain similarities to a stipulation for the entry of judgment. According to the German court's findings, although Zorn was not represented by an attorney when the deed recognizing his debt was signed, it was clear from correspondence submitted to the court that Zorn "had been represented and advised by an attorney

---

[4] Moreover, the court agrees with Judge Posner's analysis in *Society of Lloyd's* that the question of whether the German legal system provides impartial tribunal and procedures comparative with due process is not an issue of fact which requires the submission of evidence. 233 F.3d at 477.

7

prior to signing the notary's deed." May 10, 2004 judgment of Frankfurt Am Main Regional Court at page 7.

When Genujolok (then Lombardkasse AG) sought to obtain a German judgment based on the deed recognizing Zorn's debt, Zorn was permitted to oppose the entry of judgment on the ground that the debt was beyond his financial ability to pay and on the ground that he had not been represented by an attorney. May 10, 2004 judgment at page 3. The German court considered and rejected those claims, as well as arguments by Zorn that the case was not properly brought in the Frankfurt am Main Regional Court and that Zorn's obligation was contingent on his recovery in another law suit. *Id.* at pages 4-5, 7. In addition, the German court also accepted Zorn's contention that he had paid DM 358,576.46 and deducted that amount from the amount owed to Genujolok in the judgment. *Id.* at page 2.


3.    Existence of Judgment

Zorn argues that the ruling entered by the German courts is not a "judgment" entitled to recognition under the Recognition Act. It appears that original notarized recognition of debt would not have qualified as a judgment even though, under German law, such deeds may be judicially enforced. Lombardkasse therefore initiated judicial action in Germany to reduce the notarized recognition of debt to a

8

judgment. A judgment was in fact rendered by the Frankfurt am Main Regional Court on May 10, 2004, and that judgment was affirmed on appeal by the Frankfurt am Main Highest Regional Court on May 25, 2005. As noted above, the May 10, 2004, judgment was only entered after consideration of various arguments offered by Zorn, and that judgment also deducted the DM 358,576.46 that had been repaid by Zorn.

The May 10, 2004 judgment filed in this court, bearing the seal of the Frankfurt am Main Regional Court, plainly qualifies as a foreign judgment under the Recognition Act. *See* 14 M.R.S. § 8502(2):

> "Foreign judgment" means any judgment of a foreign state granting or denying recovery of a sum of money, other than a judgment for taxes, a fine or other penalty or a judgment for support in matrimonial or family matters.

4.    Reciprocity

Zorn's final argument is that the German judgment should not be recognized under 14 M.R.S. § 8505(2)(G), which grants the court discretion not to recognize a foreign judgment if

> [t]he foreign court rendering the judgment would not recognize a comparable judgment of this state.

According to Zorn, Germany has a similar reciprocity requirement. He argues that this leads to the following conundrum:

9

> One cannot conclude that a German court would recognize a comparable judgment from Maine without first knowing that Maine would recognize a comparable judgment from Germany, but one cannot know whether Maine would recognize a comparable judgment from Germany without knowing whether Germany would recognize a comparable judgment from Maine.

Defendant's Motion for Plenary Hearing, filed April 21, 2006, at 9. In other words, Zorn argues that the existence of both the Recognition Act's reciprocity criterion and Germany's corresponding reciprocity criterion leads the court into a hall of mirrors which does not permit recognition.

There are two answers to this argument. The first is that the burden of proof of showing that Germany courts would not recognize a Maine judgment is on Zorn. *See Banque Libanaise v. Khreich*, 915 F.2d 1000, 1005 (5th Cir. 1990); *Alfadda v. Fenn*, 966 F.Supp. 1317, 1326 (S.D.N.Y. 1997). Accepting that Germany has a reciprocity requirement, Zorn has made no showing that the German courts currently would not recognize a Maine judgment.[5]

Second, the reciprocity criterion is discretionary, not mandatory. *See, e.g.,* paragraph 3 of the comment to section 4 of the Uniform Foreign-Country Money Judgments Recognition Act, National Conference of Governments on Uniform State Laws (2005). Moreover, this criterion has engendered considerable criticism

---

[5] Genujolok has submitted an affidavit from a German attorney stating that German courts have recognized and enforced judgments issued by American courts in the past. Muller Affidavit ¶ 8. The court does not rely on this affidavit, but rather on the burden of proof stated above.

10

and is no longer a requirement for the recognition of foreign judgments in the federal courts. *See, e.g., Banque Libanaise v. Khreich*, 915 F.2d at 1005; *Tahan v. Hodgson*, 662 F.2d 862, 867-68 (D.C. Cir. 1981).[6]

In the court's view, affording recognition here and rejecting the circular reciprocity argument rendered by Zorn is consistent with the overall purpose of the Recognition Act – to make it more likely that Maine judgments will be recognized abroad by satisfying the reciprocity concerns of foreign courts. *See* Prefatory Note to Uniform Foreign Country Money Judgments Recognition Act, National Conference of Governors on Uniform State Laws (2005). Unless due process or public policy considerations intervene, *see* 14 M.R.S. § 8505(2)(B), the purpose of the Recognition Act is to provide an expeditious method for collecting money judgments rendered by foreign courts without requiring judgment creditors to relitigate the entire case in any jurisdiction where assets are located. *Society of Lloyds v. Ashenden*, 233 F.3d at 477. Zorn has not raised any argument that the

---

[6] Consideration of reciprocity was a feature of one of the seminal U.S. Supreme Court decisions with respect to the recognition of foreign judgments. *Hilton v. Guyot*, 159 U.S. 113, 210 (1895). As noted above, however, the federal courts have now departed from *Hilton* on this issue. Moreover, although the Law Court cited *Hilton* in a recent decision on the issue of whether to recognize and enforce a foreign judgment, *Roy v. Buckley*, 1997 ME 155, 698 A.2d 497, it did not mention reciprocity. Instead, the Court cited *Hilton* for the proposition that the focus should be on whether the judgment was rendered by a competent court possessing jurisdiction of the case and the parties after an opportunity to defend in a proceeding conducted "according to the source of a civilized jurisprudence." 1997 ME 155, ¶ 11, 698 A.2d at 501. In the *Roy* opinion, the Law Court also cited *United States v. Boots*, 80 F.3d 580, 587 (1st Cir. 1996), for the proposition that "courts will generally enforce foreign non-tax civil judgments unless due process consideration interfere." *Id.*

11

German judgment is repugnant to Maine's public policy, and his due process arguments are unavailing for the reasons previously discussed.

Under these circumstances, the court finds no basis to refuse recognition in this case.

Genujolok argues that it should be entitled to proceed forthwith to enforce its judgment. The court agrees but will allow Zorn a brief period to seek a stay pending appeal from the Law Court.

The entry is:

> Defendant's motion for plenary hearing is denied after consideration of defendant's arguments that the German judgment against defendant should not be recognized. Plaintiff shall be entitled to commence enforcement proceedings ten days from the date this order is docketed unless within that time defendant has sought and obtained a stay of this order pending appeal.
>
> The clerk is directed to incorporate this order in the docket by reference pursuant to Rule 79(a).

Dated: June _4_, 2007

Thomas D. Warren
Justice, Superior Court

12

PAUL MACRI ESQ          _P\
PO BOX 961
LEWISTON ME 04243

DAVID MCCONNELL ESQ     ◡PM
PO BOX 426
PORTLAND ME 04112